UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Janet Robinson,<br><br>            Plaintiff,<br><br>    v.<br><br>Clear Recon Corp., et al.,<br><br>            Defendants. | No. 2:20-cv-01874-KJM-CKD<br><br>ORDER |

        Janet Robinson filed this action against Wells Fargo Bank, N.A., which serviced mortgage loans on two properties she owned. She alleges Wells Fargo wrongly used the checks she wrote for one of these mortgages to pay the other. She also alleges Wells Fargo withheld information from her, ignored her letters and calls, and prevented her from discovering what it had done.

        The court dismissed some of Ms. Robinson's claims in a previous order, and it did not permit some of the claims she now asserts in her amended complaint. Other claims in her amended complaint are precluded by a judgment Wells Fargo obtained against her in a previous state court action. Some claims also fall short of federal pleading standards, but these shortcomings could potentially be corrected in an amended complaint. Her complaint is thus **stricken**, and Wells Fargo's motion to dismiss is **granted in part with leave to amend**, as explained below.

# I. BACKGROUND

At this stage, the court accepts the factual allegations in Ms. Robinson's complaint as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). According to her complaint, in 2006, she obtained a mortgage loan to buy a home in Antelope, California and began making payments. First Am. Compl. ¶¶ 6, 23, ECF No. 40. Wells Fargo's predecessor was the servicer. *See id.* ¶¶ 7, 23. About two years later, Ms. Robinson's father gave her his home in Richmond, California. *Id.* ¶¶ 6, 24. Wells Fargo was also the servicer of a mortgage on the home in Richmond. *Id.* ¶ 7.

Ms. Robinson's father continued to live in the Richmond home until his death in 2009. *Id.* ¶¶ 24–25. After his death, Ms. Robinson offered the home for rent and paid the mortgage using the rent proceeds. *See id.* ¶ 26. She made payments without any problems until 2012, when Wells Fargo returned several checks she had written and claimed almost $5,000 was overdue. *Id.* ¶ 28. For the next two years, Wells Fargo refused to send Ms. Robinson information about the mortgage on the Richmond property, apparently because it believed incorrectly that she was not authorized to receive that information, although it acknowledged her father was deceased, and it knew she owned the property. *Id.* ¶ 31. Ms. Robinson eventually filed a complaint with the Consumer Financial Protection Bureau, and Wells Fargo accepted her checks again. *Id.* ¶¶ 32–33.

Early the next year, Ms. Robinson filed for bankruptcy protection in this District. *See id.* ¶ 36. Soon afterward, Wells Fargo told her it was beginning a process that would eventually result in a foreclosure sale of the Richmond property. *Id.* ¶¶ 37, 39. It claimed incorrectly that she had not made payments for about five months. *See id.* ¶ 40. Ms. Robinson did not know it at the time, but Wells Fargo had been using the checks she had been writing for the Richmond mortgage to make payments on the Antelope mortgage. *Id.* ¶ 41. Wells Fargo also reported incorrectly to the bankruptcy trustee that Ms. Robinson had not been paying the Richmond mortgage. *See id.* ¶ 44. As a result, it appeared to the bankruptcy trustee that Ms. Robinson had been skipping mortgage payments but collecting rent, and withholding the rent from the bankruptcy estate. *See id.*; *see also* Contempt Mot. ¶¶ 2–3, *In re Robinson*, No. 15-20081-E-7

(Bankr. E.D. Cal. Dec. 23, 2015), Dkt. No. 129; Order, *In re Robinson*, No. 15-20081-E-7 (Bankr. E.D. Cal. Jan. 15, 2016), Dkt. No. 139.[1]

Ms. Robinson does not explain the consequences of this misconception clearly in her current complaint, but at hearing, counsel clarified that this action concerns only one alleged wrong: Wells Fargo's failure to communicate with her and respond to her inquiries about her accounts and the rerouted checks. She does not claim, for example, that she could have prevented the sale of either the Antelope property or the Richmond property if she had known about the rerouted checks.

While the bankruptcy action was pending, Ms. Robinson attempted to speak to Wells Fargo about why it had reported incorrectly to the bankruptcy trustee that she had not been making payments on the Richmond mortgage. *See* First Am. Compl. ¶ 45. Her requests went unanswered for more than a year. *See id.* ¶ 48. Wells Fargo eventually admitted it had applied her payments to the Antelope property in error. *Id.* ¶ 49. It also admitted that if it had correctly applied her checks to the Richmond property, the mortgage would not have been referred to foreclosure, so the Richmond property would not have been sold. *Id.* It sent her a check to reimburse her for the payments it had applied incorrectly to the Antelope property. *Id.* ¶ 50.

Ms. Robinson continued her attempts to obtain more information from Wells Fargo about what had happened, including by requesting an "accurate accounting" for both the Richmond and Antelope properties. *See id.* ¶¶ 51–55, 57, 62–68. Sometimes Wells Fargo responded nonsensically. *See id.* ¶ 55 (alleging Wells Fargo told Robinson's deceased father that it had "verified" she did not have his permission to receive information about his account, contrary to its prior acknowledgment of his death and her authority); *id.* ¶ 67 (alleging promising responses to a letter sent by Robinson to her deceased father); *id.* ¶ 68 (suggesting Robinson's account had been opened without her permission). Sometimes it promised to respond but never did. *See id.* ¶¶ 64–67. And sometimes it claimed it could not respond due to ongoing litigation between them,

---

[1] Copies of these documents were also docketed in this action. *See* Req. J. Notice Exs. O, P, ECF No. 44. The court takes judicial notice of their contents and their filing in the bankruptcy action as undisputed matters of public record. *See Harris v. Cty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012); *Reusser v. Wachovia Bank, N.A.*, 525 F.3d 855, 857 n.1 (9th Cir. 2008).

1  discussed below. *Id.* ¶ 63.  Overall, Ms. Robinson alleges, Well Fargo exhibited "disdain,
2  inaction, obfuscation, and apathy." *Id.* ¶ 69.  Her mental health deteriorated as a result. *Id.* ¶ 70.
3        In August 2018, Ms. Robinson filed a complaint in California state court challenging the
4  process that eventually led to the sale of the Antelope property. *See generally* Compl., *Robinson*
5  *v. Clear Recon Corp.*, No. 34-2018-00239112 (Cal. Super. Ct. Sacramento Cty. Aug. 20, 2018).[2]
6  She did not make allegations about rerouted checks or the Richmond property. *See generally id.*
7  Wells Fargo obtained a judgment in its favor in 2020. *See* Judgment, *Robinson v. Clear Recon*
8  *Corp.*, No. 34-2018-00239112 (Cal. Super. Ct. Sacramento Cty. July 15, 2020).[3]
9        While the state court action was pending, Ms. Robinson also filed an action in this court.
10 *See* Compl., No. 19-568, ECF No. 1; First Am. Compl., No. 19-568, ECF No. 10.[4]  Her
11 complaints included allegations about the Richmond property, about Wells Fargo's rerouting of
12 her checks, and about her attempts to obtain a "full accounting" for both properties. *See, e.g.*,
13 First Am. Compl. at 1–2, 4–5, No. 19-568, ECF No. 10.  She was not represented by counsel, and
14 the action was referred to the assigned magistrate judge, who dismissed her complaint with leave
15 to amend after finding no basis for this court to exercise its jurisdiction. *See* Order, No. 19-568,
16 ECF No. 15.  Ms. Robinson did not amend her complaint, and the action was dismissed without
17 prejudice for lack of prosecution. *See* F&Rs, No. 19-568, ECF No. 17, *adopted in full by* Order,
18 No. 19-568, ECF No. 18.
19       Ms. Robinson then filed this action. *See generally* Compl., ECF No. 1.  She was not
20 originally represented by counsel. *See id.*  As in the state court action, she challenged the
21 foreclosure process for the Antelope property. *See id.* ¶¶ 11–24.  She also asserted a claim based
22 on the rerouted checks. *See id.* ¶¶ 25–27.  This matter was referred to the assigned magistrate

---

[2] A copy of the complaint was also docketed in this action. *See* Req. J. Notice Ex. W, ECF No. 44.  The court takes judicial notice of the complaint's filing and Ms. Robinson's allegations, but not their truth, as undisputed matters of public record, over the plaintiff's objection. *See Harris*, 682 F.3d at 1132.

[3] A copy of this judgment was also docketed in this action. *See* Req. J. Notice Ex. AA, ECF No. 44.  The court takes judicial notice of the judgment as an undisputed matter of public record. *See Harris*, 682 F.3d at 1132.

[4] The court takes judicial notice of the filings in this action and their contents as an undisputed matter of public record. *See Harris*, 682 F.3d at 1132.

4

judge, who granted Ms. Robinson's request to proceed in forma pauperis and ordered service on Wells Fargo and another entity she later dismissed voluntarily. *See* Order, ECF No. 3; Mot. Voluntary Dismissal, ECF No. 31; Min. Order, ECF No. 32. This court granted Wells Fargo's motion to dismiss her claims about the foreclosure process without leave to amend under the doctrine of claim preclusion. *See* F&Rs at 6–8, ECF No. 19, *adopted in relevant part by* Prev. Order (April 29, 2021), ECF No. 33. Ms. Robinson's claim about the rerouted checks, however, concerned different "primary rights" under California's claim preclusion rules, so that claim was not precluded. *See* Prev. Order at 2. Although the claim was not precluded, Ms. Robinson did not explain what injury she had suffered as a result of the rerouting, so the court dismissed the claim for lack of standing. *See id.* at 2–3. The court granted Ms. Robinson leave to amend to assert a claim based on her allegations about rerouted checks. *See id.* at 3.

Ms. Robinson amended her complaint and retained counsel. *See* Notice of Appearance, ECF No. 34; First Am. Compl., ECF No. 40. She now asserts four claims. First, she alleges Wells Fargo violated federal regulations that impose obligations on loan servicers when they receive certain correspondence from borrowers. *See* First Am. Compl. ¶¶ 71–79 (citing 12 C.F.R. §§ 1024.35 & 1024.36). Second, she asserts a negligence claim based on her allegation that Wells Fargo breached its duty to use reasonable care in applying her checks to her mortgages and responded inadequately to her correspondence. *See id.* ¶¶ 80–85. Third, she claims Wells Fargo breached its contract obligations under the agreement that governed the Richmond and Antelope mortgages. *See id.* ¶¶ 86–93. And fourth, she alleges Wells Fargo's actions were unfair and unlawful business practices. *Id.* ¶¶ 94–100 (citing Cal. Bus. & Prof. Code § 17200).

Wells Fargo now moves to dismiss. It argues Ms. Robinson has gone further in her amended complaint than this court permitted when it granted her leave to amend. *See* Mot. at 7–8, ECF No. 43. It also argues her claims are precluded because they either were resolved against her in state court or could have been raised in that action, but were not. *See id.* at 8–9. Finally, it moves to dismiss her claims on their substance under Rule 12(b)(6). *See id.* at 10–19. Ms.

1  Robinson opposes the motion, Opp'n, ECF No. 47,[5] and Wells Fargo has replied, Reply, ECF

2  No. 50.  The court held a hearing by videoconference on October 8, 2021.  Hr'g Min., ECF No.

3  54.  Eric Mercer appeared for Ms. Robinson, and Jeremy Shulman appeared for Wells Fargo.

## II. DISCUSSION

The court begins with Wells Fargo's argument that Ms. Robinson's amended complaint includes allegations and claims this court did not permit when it granted her leave to amend. District courts in the Ninth Circuit often permit litigants to add new claims to their pleadings when motions to dismiss are granted with leave to amend without limitation.  *See, e.g.*, *DeLeon v. Wells Fargo Bank, N.A.*, No. 10-01390, 2010 WL 4285006, at *3 (N.D. Cal. Oct. 22, 2010) (citing *Topadzhikyan v. Glendale Police Dep't*, No. 10-387, 2010 WL 2740163, at *3 n.1 (C.D. Cal. July 8, 2010), and *Gilmore v. Union Pac. R. Co.*, No. 09-02180, 2010 WL 2089346, at *4 (E.D. Cal. May 21, 2010)).  When district courts have granted leave to amend to cure specific shortcomings, by contrast, they have usually stricken or dismissed claims based on new or different legal theories.  *See, e.g.*, *Benton v. Baker Hughes*, No. 12-07735, 2013 WL 3353636, at *3 (C.D. Cal. June 30, 2013) (collecting authority), *aff'd sub nom. Benton v. Hughes*, 623 F. App'x 888 (9th Cir. 2015); *DeLeon*, 2010 WL 4285006 at *3 (same).  But the Federal Rules of Civil Procedure embody a liberal policy in favor of amendments to the pleadings and resolutions on the merits.  *See, e.g.*, *Bowles v. Reade*, 198 F.3d 752, 757 (9th Cir. 1999); *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981).  For that reason, unless an order clearly limits the scope of the amendments it permits, or unless the opposing party would be unfairly prejudiced by a new or expanded claim, district courts have been loath to strike or dismiss those claims.  *See, e.g.*, *Urista v. Bank of Am., N.A.*, No. 11-03097, 2012 WL 10596, at *6 (N.D. Cal. Jan. 3, 2012); *Gilmore*, 2010 WL 2089346, at *4.

This court's previous order in this case clearly limited the scope of the amendments Ms. Robinson was permitted to make.  That order dismissed the original complaint "with leave to amend in part," not in total.  Prev. Order at 3 (emphasis omitted).  If Ms. Robinson had "suffered

---

[5] Ms. Robinson's opposition brief exceeds the 20-page limit ordinarily imposed by this court's standing orders.  Briefs exceeding this limit in the future may result in sanctions.

an injury as a result of Wells Fargo's rerouting of her check," the court permitted her to "amend her complaint within thirty days to assert a claim based on that allegation," not others. *Id.* (emphasis omitted). "All other claims" were "dismissed with prejudice and without leave to amend." *Id.* The court did not permit broad allegations about the mortgage servicing industry's failures, *see* First Am. Compl. ¶¶ 13–21, about Wells Fargo's failures to communicate or investigate, *see, e.g.*, *id.* ¶¶ 52–69, or about the obligations of mortgage servicers who receive requests and notices from borrowers, *see id.* ¶¶ 72–79. As counsel clarified at hearing, all of Ms. Robinson's current claims rest on these allegations. Her complaint thus exceeds the clear scope of this court's previous order and is stricken in full.

Ms. Robinson urges the court to expand the scope of its order to permit all of the claims she now asserts. *See* Opp'n at 7. The court declines to permit such a broad post-hoc amendment now. Doing so would unfairly prejudice Wells Fargo and would be, at least in part, an exercise in futility, because most of her claims are precluded. *Cf., e.g.*, *Sonoma Cty. Ass'n of Retired Emps. v. Sonoma Cty.*, 708 F.3d 1109, 1117 (9th Cir. 2013) (holding leave to amend may be denied to avoid prejudice and exercises in futility).

Wells Fargo obtained a favorable judgment in the state court action, in which Ms. Robinson contested the process that led up to the Antelope foreclosure sale, including Wells Fargo's communications. *See, e.g.,* Compl. ¶¶ 17, 27, 29, 36, 58, *Robinson v. Clear Recon Corp.*, No. 34-2018-00239112 (Cal. Super. Ct. Sacramento Cty. Aug. 20, 2018) (alleging Wells Fargo was "nonresponsive," "did not return [her] calls," "never contacted" her, shuffled her from one representative to another, and did not notify her of important developments). She alleged then, as she does now, that she suffered damages and emotional harms as a result of Wells Fargo's actions. *Compare, e.g.*, *id.* at 16–17 & ¶¶ 21, 31, 46, 55 *with, e.g.*, First Am. Compl. at 15–16 & ¶¶ 78, 98. She could have asserted her current claims about Wells Fargo's alleged unresponsiveness and obfuscation in the state court action. These claims are thus precluded. *See Allen v. McCurry*, 449 U.S. 90, 96 (1980) ("Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so . . . ." (citing 28 U.S.C. § 1738); *DKN Holdings LLC v. Faerber*,

7

61 Cal. 4th 813, 823–24 (2015) (summarizing California rules of claim preclusion); *Mycogen Corp. v. Monsanto Co.*, 28 Cal. 4th 888, 896–97 (2002) (same).

Ms. Robinson does not deny that this is so, but she argues her current claims rest on a different legal foundation. *See* Opp'n at 7–10. As the magistrate judge explained, if Ms. Robinson were permitted to relitigate the adequacy of Wells Fargo's communications, even on a different legal basis, she would be pursuing the type of "piecemeal litigation" the California Supreme Court has discouraged. F&Rs at 7 (citing *Grisham v. Philip Morris U.S.A., Inc.*, 40 Cal. 4th 623, 642 (2007)). "[A] judgment for the defendant is a bar to a subsequent action by the plaintiff based on the same injury to the same right, even though [s]he presents a different legal ground for relief." *Id.* at 6–7 (alterations in original) (emphasis omitted) (quoting *Boeken v. Philip Morris USA, Inc.*, 48 Cal. 4th 788, 798 (2010)).

Only one claim in Ms. Robinson's operative compliant could not have been litigated in her state court action. She cites a letter sent after the state court complaint had already been filed. *Compare* First Am. Compl. ¶¶ 62–70 (referring to October 4, 2019 letter) *with* Compl., *Robinson v. Clear Recon Corp.*, No. 34-2018-00239112 (Cal. Super. Ct. Sacramento Cty. Aug. 20, 2018). A claim based on that letter and Wells Fargo's responses to it would not necessarily be precluded, but it is unclear from her current allegations whether that is so. She sent the final letter soon after the state-court case began and long before it concluded, and she does not describe any differences between that letter and her earlier correspondence. *Compare id.* ¶¶ 62, 74 (referring to October 4, 2019 letter) *with* Compl., *Robinson v. Clear Recon Corp.*, No. 34-2018-00239112 (Cal. Super. Ct. Sacramento Cty. Aug. 20, 2018), *and with* Judgment, *Robinson v. Clear Recon Corp.*, No. 34-2018-00239112 (Cal. Super. Ct. Sacramento Cty. July 15, 2020). At this stage, however, the court cannot conclude that claims based on allegations about this letter would be precluded and thus futile.

Wells Fargo asserts several arguments for dismissal on other grounds, and these arguments suggest an amendment might very well be futile for other reasons. The court has considered these arguments carefully. Without knowing what claims and factual allegations Ms. Robinson might assert in any further amended complaint, the court cannot say whether an

amendment would be futile. Ms. Robinson is thus permitted to further amend her complaint, but only as specified below and to the extent consistent with the obligations imposed by Federal Rule of Civil Procedure 11.

### III.   CONCLUSION AND SCHEDULING

The first amended complaint is **stricken** for exceeding the scope of the court's previous order granting leave to amend. Ms. Robinson's request for leave to further amend is **granted in part**. She may further amend her complaint to assert a claim or claims based on injuries allegedly caused by Wells Fargo's responses or unresponsiveness to her letter dated October 4, 2019, cited in paragraph 62 of the stricken First Amended Complaint. Any other claims or allegations will be stricken without notice. Any second amended complaint must be filed **within 21 days**.

Having reviewed the parties' joint status report, the court issues the following order under Federal Rule of Civil Procedure 16:

- Disclosures required by Federal Rule of Civil Procedure 25(a)(1) must be made **within 21 days** of the day any further amended complaint is filed.
- Fact discovery shall be completed by **April 21, 2023**;
- Expert disclosures shall be completed by **May 12, 2023**;
- Rebuttal expert witnesses shall be exchanged **June 2, 2023**;
- All expert discovery shall be completed by **June 23, 2023**; and
- All dispositive motions, except for motions for continuances, temporary restraining orders or other emergency applications, shall be heard by **August 25, 2023**.

If the parties request to participate in the court's Voluntary Dispute Resolution Program or a settlement conference before a magistrate judge, they may file a request in writing.

This case schedule will become final without further order of the court unless objections are filed **within fourteen calendar days** of this order. The schedule, once final, shall not be modified except by leave of court upon showing of good cause.

/////

1     This order resolves ECF No. 43.

2     IT IS SO ORDERED.

3 DATED: June 9, 2022.

                                CHIEF UNITED STATES DISTRICT JUDGE